648 S.E.2d 26

**STATE of West Virginia ex rel. Mark G. SERGENT, Roane County Prosecuting Attorney, Petitioner,**

v.

**The Honorable David W. NIBERT, Judge of the Circuit Court of Roane County, and Robert Sarver, Defendant, Respondents.**

**No. 33327.**

Supreme Court of Appeals of West Virginia.

Submitted: May 9, 2007.

Decided: June 6, 2007.

Mark G. Sergent, Roane County Prosecuting Attorney, Spencer, Pro Se.

Teresa C. Monk, Public Defender Corporation, Spencer, for the Respondent, Robert Sarver.

ALBRIGHT, Justice.

Petitioner Mark G. Sergent, Prosecutor of Roane County, seeks a writ of prohibition to

prevent enforcement of the December 5, 2005, order of the Circuit Court of Roane County dismissing an indictment returned against Robert Sarver for the offense of driving with a revoked operator's license. As grounds for the dismissal, the trial court ruled that an individual who operates an all-terrain vehicle on a public highway cannot violate the prohibition set forth in West Virginia Code § 17B–4–3 (2004) for driving while suspended or revoked because separate statutory provisions govern the operation of all-terrain vehicles. Having examined the applicable statutory provisions, we conclude that the circuit court's interpretation of the relevant statutory provisions was in error and the indictment should not have been dismissed. Accordingly, a writ of prohibition shall issue to prohibit the enforcement of the December 5, 2005, order of dismissal.

## I. Factual and Procedural Background

Robert Sarver was observed traversing a public highway while operating an all-terrain vehicle on April 28, 2004. He was arrested and charged with driving while revoked, third offense, in violation of West Virginia Code § 17B–4–3(b). On May 25, 2005, the Roane County Grand Jury indicted Mr. Sarver for the felony offense of driving while license revoked for driving under the influence of alcohol, third offense.

Mr. Sarver filed a "Motion to Clarify Law" to resolve whether an individual who operates an all-terrain vehicle in accordance with the provisions of the newly-enacted chapter 17F of the West Virginia Code [1] can violate the provisions of West Virginia Code § 17B–4–3. Citing specific language in chapter 17F that negates the need for an operator's license, Mr. Sarver argued that he could not be found to be in violation of West Virginia Code § 17B–4–3 in connection with his operation of an all-terrain vehicle.

Upon its consideration of the motion to clarify, the trial court compared the statutory provisions of chapter 17F with the language set forth in West Virginia Code § 17B–4–3. In doing so, the circuit court focused on the fact that a violation of West Virginia Code § 17B–4–3 requires the use of "a motor vehicle on any public highway of this state." W.Va.Code § 17B–4–3. Because West Virginia Code § 17F–1–1(c) (2004) states that "[o]peration of an all-terrain vehicle in accordance with subsection (b) [§ 17F–1–1(b)] [2] shall not constitute operation of a motor vehicle on a road or highway of this state as contemplated by the provisions of section seven [§ 17F–1–7] [3] of this article," the trial court reasoned that lawful operation of an all-terrain vehicle could not result in a violation of the driving while suspended or revoked provisions of West Virginia Code § 17B–4–3. W.Va.Code § 17F–1–1(c) (footnotes added). Based on this finding, the circuit court dismissed the indictment against Mr. Sarver through its order entered on December 5, 2005. In an effort to prohibit the enforcement of the lower court's order, Petitioner instituted this original proceeding.

## II. Standard of Review

■ In prohibition cases where the tribunal's jurisdiction is not at issue, we apply the following standard:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers,

---

**1.** This chapter, which went into effect on May 26, 2004, regulates the operation of all-terrain vehicles.

**2.** That provision provides that:

(b) An all-terrain vehicle may, for the sole purpose of getting from one trail, field or area of operation to another, be operated upon the shoulder of any road, street or highway referred to in subdivision (2), subsection (a) of this section, other than an interstate highway, for a distance not to exceed ten miles, if:

(1) The vehicle is operated at speeds of twenty-five miles per hour or less; and

(2) The vehicle is operated at any time from sunset to sunrise, the all-terrain vehicle must be equipped with headlights and taillights which must be illuminated.

W.Va.Code § 17F–1–1(b).

**3.** That section provides that "a motor vehicle operator's license is not required of an operator of an all-terrain vehicle when he or she is operating said vehicle in conformity with the provisions of subdivision (2), subsection (a) or subsection (b), section one [§ 17F–1–1] of this chapter except when the operator is under the age of eighteen and is transporting a passenger under the age of eighteen." W.Va.Code § 17F–1–7.

this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these standards in mind, we proceed to determine whether a writ of prohibition should issue.

### III. Discussion

■ Petitioner argues that a person who operates an all-terrain vehicle while under the influence of alcohol can be prosecuted for operating a vehicle while suspended or revoked in violation of the provisions of West Virginia Code § 17B–4–3. In support of this position, Petitioner argues that West Virginia Code § 17B–4–3 prohibits an individual whose operator's license has been suspended or revoked from operating *any* motor vehicle, which by definition includes an all-terrain vehicle. Conversely, Mr. Sarver maintains that an individual cannot violate the statutory offense provided for operation of a motor vehicle while having a suspended or revoked operator's license because a license is not required to operate an all-terrain vehicle. *See* W.Va.Code § 17B–4–3.

The straight forward issue presented by this case is whether an individual's operation of an all-terrain vehicle on a public highway

at a time when his or her operator's license has been revoked violates the provisions of West Virginia Code § 17B–4–3. In creating a distinct criminal offense for driving with a suspended or revoked license,[4] the Legislature defined the offense as follows:

> (b) *Any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol,* controlled substances or other drugs, or for driving while having an alcoholic concentration in his or her blood of eight hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, is, for the first offense, guilty of a misdemeanor....

W.Va.Code § 17B–4–3 (emphasis supplied).

There is no dispute that Mr. Sarver was physically operating an all-terrain vehicle on a public highway when observed on April 28, 2004. There is also no dispute that the definitions provided by the Legislature clearly include an all-terrain vehicle as a motor vehicle. *See* W.Va.Code § 17B–1–1(b) (1990) (Repl.Vol.2004) (defining "motor vehicle" as "[e]very vehicle which is self-propelled"). Finally, there is no disagreement as to the fact that Mr. Sarver was operating an all-terrain vehicle during a period of time when his privilege to operate a motor vehicle in this state was revoked. What is disputed is whether the enactment of chapter 17F, which governs the operation of all-terrain vehicles in this state, was intended to abrogate the offense of driving a motor vehicle while suspended or revoked with regard to all-terrain vehicles.

Essentially, Mr. Sarver argues that as a later-enacted piece of specialized legislation, the enactment of chapter 17F removed all-terrain vehicles from inclusion within the laws that pertain to and govern the operation of motor vehicles in general. As support for this contention, Mr. Sarver cites the language of West Virginia Code § 17F–1–1(c), which provides that "[o]peration of an all-terrain vehicle in accordance with subsection

---

4. *Cf.* W.Va.Code § 17B–2–1(f) (2002) (Repl.Vol. 2004) (setting forth offense for operation of a

motor vehicle without an operator's license).

(b)[5] shall not constitute operation of a motor vehicle on a road or highway of this state as contemplated by the provisions of section seven [§ 17F–1–7] of this article." W.Va. Code § 17F–1–1(c) (footnote added). Disregarding the "as contemplated" language of that provision, Mr. Sarver advocates that the Legislature intended that operation of an all-terrain vehicle in compliance with the provisions of chapter 17F would in *all* circumstances preclude such vehicle's use as "constitut[ing] operation of a motor vehicle on a road or highway of this state." W.Va.Code § 17F–1–1(c). Upon analysis, however, the reasoning advanced by Mr. Sarver does not withstand scrutiny.

By omitting reference to the "as contemplated" language that immediately follows the statutory language he relies upon, Mr. Sarver suggests an expansive use of the statutory language that was not intended by the Legislature. The Legislature was clear in stating that if you comply with the provisions set forth in subsection (b) of West Virginia Code § 17F–1–1,[6] which delineates permissible speeds, routes of travel, and times of day for the lawful operation of an all-terrain vehicle, then you are not subject to the general rules of operation that govern the use of this state's roads, which are set forth in chapter 17C, and you are not required to obtain an operator's license. *See* W.Va.Code § 17F–1–7.[7]

The language upon which Mr. Sarver relies to argue that lawful operation of an all-terrain vehicle statutorily prevents the operator from committing an offense under West Virginia Code § 17B–4–3 clearly does not apply outside the ambit of chapter 17F. The Legislature unambiguously stated that compliance with the provisions of subsection (b) of West

Virginia Code § 17F–1–1 statutorily prohibits the use of an all-terrain vehicle from constituting the operation of "a motor vehicle on a road or highway of this state *as contemplated by the provisions of section seven* [§ 17F–1–7] *of this article.*" W.Va.Code § 17F–1–1(c) (emphasis supplied). If the Legislature had intended the all-encompassing interpretation advocated by Mr. Sarver, it stands to reason that the "as contemplated" limitation would have been omitted from the statutory provision at issue.

■ By attaching undue importance to the absence of a license requirement in connection with the lawful operation of an all-terrain vehicle, both the trial court and Mr. Sarver overlook the fact that licensure is not the controlling factor with regard to the commission of an offense under West Virginia Code § 17B–4–3. When the administrative sanction of license suspension or revocation is imposed pursuant to West Virginia Code § 17C–5A–2 (2004), an individual loses both the driver's license *and* the privilege to operate a motor vehicle on the public highways of this state. *See* W.Va.Code § 17B–1–1(p),(q). Critically, the criminal offense at issue is not defined in terms of driving while an operator's license is suspended or revoked, but instead in terms of the suspension or revocation of the *privilege* to operate a motor vehicle on the public highways of this state. *See* W.Va.Code 17B–4–3(b). Rather than being determined by the need for an operator's license, the issue before us is controlled by what the loss of an operator's license entails. With the revocation of his operator's license, Mr. Sarver lost his privilege to operate *any* motor vehicle, which includes an all-terrain vehicle, on the public highways of this state. Consequently, the loss of his privilege to

---

**5.** W.Va.Code § 17F–1–1(b).

**6.** *See supra* note 2.

**7.** That statute provides as follows:

(a) Every person operating an all-terrain vehicle upon a public road or highway of this state shall be subject to all of the duties applicable to the driver of a vehicle by the provisions of chapter seventeen-c [§ 17C–1–1 et seq.] of this code except where inconsistent with the provisions of this article and except as to those provisions of chapter seventeen-c of

this code which by their nature can have no application.

(b) Notwithstanding the provisions of subsection (a) of this section, a motor vehicle operator's license is not required of an operator of an all-terrain vehicle when he or she is operating said vehicle in conformity with the provisions of subdivision (2), subsection (a) or subsection (b), section one [§ 17F–1–1] of this chapter except when the operator is under the age of eighteen and is transporting a passenger under the age of eighteen.

W.Va.Code § 17F–1–7.

operate a motor vehicle is the critical factor that governs whether Mr. Sarver can commit a violation of West Virginia Code § 17B–4–3(b) by his operation of an all-terrain vehicle on the public highways of this state.

While there are obvious reasons why the Legislature would exclude all-terrain vehicle operators from compliance with both licensing and road usage laws, there is no countervailing argument for shielding an operator of an all-terrain vehicle from prosecution for driving a motor vehicle while his or her operator's license has been suspended or revoked. In fact, the opposite is true. The rationale of "remov[ing] ... persons who drive under the influence of alcohol and other intoxicants from our highways" which underlies the administrative sanction of license revocation applies with equal force to individuals who operate all-terrain vehicles. *Shell v. Bechtold,* 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985). As we explained in *State ex rel. Hall v. Schlaegel,* 202 W.Va. 93, 502 S.E.2d 190 (1998),

> [t]his objective of removing substance-affected drivers from our roads in the interest of promoting safety and saving lives is consistent "with the general intent of our traffic laws to protect the innocent public." ... We observe that the Legislature's inclusion of a separately-designated criminal offense for driving while license revoked for DUI is indicative of the societal importance attached to removing such motorists from our roadways. *See* W.Va.Code § 17B–4–3(b).

202 W.Va. at 97, 502 S.E.2d at 194 (some citations omitted). As the amicus curiae[8] observes, "[i]t is neither logical nor in the interests of the public that a person whose privilege to drive is revoked for DUI should be allowed to drive an ATV on a public roadway." We agree.

Based on our conclusion that there is no language in chapter 17F that explicitly removes the use of an all-terrain vehicle from the reach of West Virginia Code § 17B–4–3 and because license revocation involves both the loss of a driver's license and the privilege

to operate a motor vehicle, we hold that an individual who operates an all-terrain vehicle on a public highway of this state may be prosecuted for committing the offense of driving while suspended or revoked under the provisions of West Virginia Code § 17B–4–3. Accordingly, we determine that a writ of prohibition shall issue to prohibit enforcement of the December 5, 2005, order of the Circuit Court of Roane County dismissing the indictment against Mr. Sarver for an alleged violation of West Virginia Code § 17B–4–3(b).

Writ granted.

---

**8.** The West Virginia Division of Motor Vehicles filed an amicus curiae brief in connection with this case.